# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

SLR PARTNERS, LLC and ROZI MEDICAL DEVICES LIMITED,

Plaintiffs,

vs.

B.BRAUN MEDICAL INC.,

Defendant.

CASE NO. 09 CV 1145 JM RBB

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Doc. No. 9

Plaintiffs SLR Partners, LLC and Rozi Medical Devices Limited (collectively, "SLR") own United States Patent No. 5,006,114 (the "'114 patent") for technology that facilitates sterile, needle-less injections into intravenous lines. In 1992, SLR approached B. Braun Medical Inc. ("Braun") about a joint effort to develop the '114 patent into a commercial product.[1] To that end, the parties entered an exclusive licensing agreement.

Nearly one year after entering the license agreement, SLR hired ViR Engineering ("ViR") to develop commercially viable designs based on the '114 patent at SLR's expense. ViR developed five designs that were ultimately presented to Braun by SLR. Braun then began funding ViR's work.

---

[1] The licensing agreement was originally entered into by the predecessors of SLR Partners, LLC, Rozi Medical Devices Limited and B. Braun Medical Inc. For the sake of convenience, the court will refer to the parties and their predecessors as one entity each.

Unbeknownst to SLR, Braun began developing ViR's plans into a commercial product called the UltraSite valve. In 1995, Braun obtained United States Patent No. 5,439,451 (the "'451 patent") on the UltraSite valve, naming four ViR engineers as the inventors. Two years later, in 1997, SLR learned about the development of the UltraSite valve and the '451 patent. SLR terminated the license agreement.

In 1998, Braun sought a declaratory judgment that Braun, and not SLR, owned the '451 patent. SLR counterclaimed for conversion, possession of personal property, fraud, and misappropriation of trade secrets. SLR prevailed at trial and won damages based upon past and future sales of the UltraSite valve, as well as punitive damages. At a subsequent equitable trial, the court gave SLR the option of owning the '451 patent and foregoing future damages. SLR elected to own the '451 patent, but this ruling was ultimately struck down by the Ninth Circuit. The parties then settled, with SLR receiving approximately $26 million (slightly more than the trial court initially awarded) and Braun maintaining ownership of the '451 patent.

SLR now sues Braun for patent infringement, alleging that the UltraSite valve infringes the '114 patent. Braun moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on three grounds: claim preclusion, issue preclusion, and a release of claims provision contained in the parties' prior settlement agreement. For the reasons stated below, the court grants Braun's motion to dismiss on claim preclusion grounds.

## I. LEGAL STANDARDS

A motion to dismiss on claim preclusion grounds is appropriate under Federal Rule of Civil Procedure 12(b)(6) when there is no dispute of material fact. *Scott v. Kuhlman*, 746 F.2d 1377, 1378 (9th Cir. 1984). The court can take notice of judicial documents to determine the extent of prior litigation. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

"Claim preclusion, or res judicata, applies where: (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Cent.*

/ / /

/ / /

*Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002).[2] To determine whether the prior and current claims are the same, the court considers:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*A.V. Costantini v. Trans Worlds Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). Of these factors, the fourth is the most important. *Cent. Delta Water Agency*, 306 F.3d at 952. It is irrelevant whether the plaintiff asserted the same grounds for recovery or arguments in the prior action; rather, it only matters whether the plaintiff could have asserted them. *United States v. Barajas*, 147 F.3d 905, 909 (9th Cir. 1998).

## II. DISCUSSION

The parties do not dispute that the first and third elements of claim preclusion are established. Both the prior and current cases involve the same parties or their privies, and the prior case ended with a final judgment on the merits. Therefore, the court need only determine whether the prior case—with its causes of action for conversion, possession of personal property, fraud, and misappropriation of trade secrets—encompassed the same claim as the current patent litigation.

The most important factor in determining whether the claims are the same is "whether the two suits arise out of the same transactional nucleus of facts." *Costantini*, 681 F.2d at 1202. While SLR is correct that trade secret misappropriation is different than patent infringement, both causes of action arise out of the development and sale of one device: the UltraSite valve. This complained-of *conduct* by Defendants—not the separate rights of the Plaintiff—is the most important touchstone of claim preclusion. *Cf. Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992) (denying application of claim preclusion where plaintiff complains of different conduct by defendant).

It is also significant that the source of damages in both suits would be from the same pool of money. *Cf. Barajas*, 147 F.3d at 910 (applying claim preclusion where plaintiff already recovered

---

[2] In this patent case, the court applies Ninth Circuit law because "the claim preclusion issues in this case do not depend on any rule of law having special application to patent cases." *Pactiv Corp. v. Dow Chemical Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) (internal quotations and citations omitted).

damages on same product invoice); *Costantini*, 681 F.2d at 1202 (applying claim preclusion where both suits sought damages for harm to plaintiff's business relationship with same company). In the prior case, both parties presented expert witnesses on the appropriate scope of damages. Both expert witnesses opined on the value of past and future UltraSite valve sales in giving guidance to the jury. The court would apply a similar measure of damages in the current case. If SLR were ultimately successful on its patent infringement claim, the measure of damages would be that portion of UltraSite valve sales attributable to the value of the '114 patent. But SLR has already received compensation for its contributions to the design of the UltraSite valve in the prior case. SLR will not be awarded an opportunity for double recovery.

Moreover, all of the facts relevant to SLR's patent infringement claim were known in 1998 when Braun initiated the declaratory judgment action that ultimately led to SLR's recovery on its trade secret misappropriation and fraud claims. Prior to the 1998 litigation, SLR obtained an UltraSite valve with which it could have done an infringement analysis against the '114 patent. Therefore, SLR could have brought its patent infringement claim then. *Cf. Barajas*, 147 F.3d at 909.

The remaining *Costantini* factors are relatively balanced: SLR does invoke a different right in the current patent infringement case than that previously asserted, and although there would be some overlap in the evidence presented in both cases—in particular the damages evidence—much of the evidence would be different. This patent infringement case, however, would drastically impair Braun's interest in the finality of its settlement agreement with SLR regarding the Ultrasite valve. *Cf. Costantini*, 681 F.2d at 1202 ("[defendant's] freedom from liability for the loss of appellant's license agreement, established by the [prior] action, could be impaired by this instant action.") Therefore, the first, second, and third *Constantini* factors cannot overcome the importance of the common transactional nucleus of facts between the two cases. Because both cases arise from this common transactional nucleus of facts, and the remaining *Constantini* considerations do not weight substantially in SLR's favor, the current patent infringement suit cannot continue.[3]

The court in *Triple Tee Golf, Inc. v. Nike, Inc.*, 618 F. Supp. 2d 586 (N.D. Tex. 2009) reached

---

[3] The court also notes that, during oral argument, counsel for SLR commendably acknowledged that SLR chose not to claim patent infringement in its initial case largely because of practical considerations, including the anticipated cost of prosecuting a patent claim.

the same conclusion on similar facts. There, plaintiff Triple Tee Golf had sued Nike for trade secret misappropriation. *Id.* at 588. Then, eight years later, Triple Tee Gold sued Nike again, this time seeking a declaration of patent inventorship. *Id.* Because both suits involved the same technology, that technology was allegedly transferred only one time, and the patent inventorship claims could have been brought in the first suit, the court granted Nike's motion for dismissal on claim preclusion grounds. *Id.* at 599. This court agrees with the analysis in *Triple Tee Golf*, and finds that the facts of the instant case are similar enough to compel the same conclusion.

## III. CONCLUSION

For the foregoing reasons, the court finds that SLR's patent infringement claim is precluded by prior litigation between the parties. There is no need to address Braun's issue preclusion and release of claims arguments. Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

DATED: October 23, 2009

Hon. Jeffrey T. Miller
United States District Judge